**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JORGE GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-cv-1384 |
| v. | ) | |
| | ) | Judge: Manish S. Shah |
| MIRAMED REVENUE GROUP, LLC; and | ) | |
| DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, MIRAMED REVENUE GROUP, LLC, (hereinafter "Miramed" or "Defendant"), by and through its attorneys Nabil G. Foster and Lindsey A.L. Conley of Hinshaw & Culbertson LLP, pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Illinois Federal District Court, submits its Memorandum of Law in Support of its Motion for Summary Judgment and states as follows:

## INTRODUCTION

Plaintiff, Jorge Garcia ("Plaintiff") filed the instant lawsuit alleging that Miramed violated sections 1692c(c), d, d(5), e and f of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff claims Defendant Miramed continued to place calls to him after he submitted a written request via a third party's website, which does not send any notifications directly to Defendant. Plaintiff claims that his written request to cease calls was submitted on Defendant's website, but in fact it was submitted on a website owned and operated by an affiliated parent company, Miramed Global Services, Inc. Plaintiff didn't allegedly send notice to the correct company. To prevail on his FDCPA claims, Plaintiff must prove that: (1) he met his burden of proof for the claims; and (2) Miramed is not entitled to the bona fide error defense.

Plaintiff's claims fail because he did not properly notify Miramed that he wished for calls to his telephone number to stop. Plaintiff allegedly submitted a cease and desist request to a third party, Miramed Global Services, Inc., a separate company from Miramed Revenue Group, LLC and which is not a debt collector. In addition, Miramed is entitled to the bona fide error defense. Therefore, summary judgment should be granted in favor of Miramed.

## STATEMENT OF MATERIAL FACTS

On August 25, 2017, Franciscan Health Chicago Heights placed an account for Plaintiff with Miramed for collection. (Defendant's Rule 56.1 Statement of Material Facts "DSMF", ¶ 4). In an effort to collect the account, Miramed sent Plaintiff three letters. (DSMF, ¶ 5). On each of the three letters Miramed prominently displayed phone numbers for Plaintiff to call and a mailing address for Plaintiff to send all correspondence regarding his account. (DSMF, ¶ 6). The letters each clearly state in bold letters "**Please Send All Correspondence, Including Bankruptcy Notices, To: MiraMed Revenue Group, 360 E. 22nd St., Lombard, IL 60148." (DSMF, ¶ 6).** The only website that is displayed on the letters sent to Plaintiff is a third party payment website address of www.mmrgpayment.com which is a website to make online payments. (DSMF, ¶ 7). Miramed's letters do not contain any type of email address or any invitation for email communication between Miramed and debtors. (DSMF, ¶ 8)

Plaintiff's complaint claims that on September 20, 2017, he submitted a written request via the website "www.miramedgs.com/contact-us" requesting that Miramed cease all calls to Plaintiff's telephone number. (DSMF, ¶ 9). Contrary to the allegations in the complaint, Plaintiff testified that he does not know when he allegedly sent the cease request on the website. (DSMF, ¶ 10). It is undisputed that the website "www.miramedgs.com/contact-us" actually belongs to a third party, Miramed Global Services, Inc., which is an affiliate and parent company for

2

Miramed Revenue Group, LLC. (DSMF, ¶ 11). Miramed never received any type of written cease request from Plaintiff. (DSMF, ¶ 12). Miramed spoke with Plaintiff twice via telephone and Plaintiff did not request Miramed to stop calling him during those telephone calls. (DSMF, ¶ 13).

During Plaintiff's deposition, he testified that the only time he asked Miramed to stop calling him was during the phone calls that he received. (DSMF, ¶ 14). The recordings of those calls show that at no point did Plaintiff verbally request Miramed to stop calling him. (DSMF, ¶ 15). Then, Plaintiff testified under oath that when he sent the alleged written cease request, he completed the action using his iPhone. (DSMF, ¶ 16). Plaintiff testified that he accessed a website via his iPhone by typing "Miramed" in a Google search. (DSMF, ¶ 17). He claims that he provided his name, telephone number, address and message for Miramed to stop calling him on a website submission form. (DSMF, ¶ 18). Plaintiff claims he took a screen shot of this request made on his iPhone and sent an electronic file of the picture to his attorneys. (DSMF, ¶ 19).

However, the evidence that Plaintiff produced in discovery as proof of the written cease request is not a true and correct copy of the alleged iPhone submission. (DSMF, ¶ 20-21). Plaintiff testified that the document produced in discovery purporting to be a copy of his submission was not accurate. (DSMF, ¶ 20). Plaintiff confirmed that the exhibit produced by Plaintiff's counsel, purporting to be a copy of the cease request, was actually **not** something that he wrote or that he created. (DSMF, ¶ 21). Plaintiff testified that the exhibit was **not** a screen shot from his iPhone and he has no knowledge about how the document exhibit was created. (DSMF, ¶ 22). Plaintiff testified that **he had never seen the screen image that was produced in discovery** by Plaintiff's counsel as evidence of Plaintiff's alleged written request. (DSMF, ¶

3

23). The screen image produced by Plaintiff's counsel is clearly modified and cropped to obscure the edges of the full screen image, *e.g.*, text is truncated in the upper right corner of the image. (DSMF, ¶ 24) When asked about the image file, Plaintiff's counsel's office stated that the produced image file was the original image file of the alleged written cease request submitted via the website. (DSMF, ¶ 25).

It is Miramed's policy and procedure to remove the phone numbers from an account if a debtor communicates that they want Miramed to stop contacting them. (DMSF, ¶ 26). In addition, an account representative will add a "do not call" or "DNC" code within the phone number field and enter a code to stop letters that may be scheduled to be sent. (DMSF, ¶ 27). Once the appropriate codes have been added to the account to stop the communications, the account is closed with the XAZ status code, which is Miramed's code for cease and desist. (DMSF, ¶ 28). Miramed employees are trained that accounts with a cease and desist status code are prohibited from being contacted. (DMSF, ¶ 29) These policies and procedures are also written as a standard operating procedure and provided to employees to follow. (DMSF, ¶ 30).

Miramed does not have a website and does not provide its representatives with external emails to be able to receive communications from debtors via email. (DMSF, ¶ 31). Miramed does not receive any communications when information is submitted on its' parent company's website. (DMSF, ¶ 32). Although Miramed does not operate or have access to its' parent company's website, there are procedures in place for the parent company to forward communications it receives from individuals regarding Miramed accounts. (DMSF, ¶ 33). It is Miramed's policy that if a communication from a debtor is forwarded from its parent company, Miramed will update its account records to reflect the contents of the debtor's communication. (DMSF, ¶ 34). On November 1, 2017, Plaintiff's attorney sent Miramed a letter regarding

4

Plaintiff's claims. (DMSF, ¶ 35). Upon receipt of that communication, Miramed began to follow its policies and procedures to properly code and close Plaintiff's account as "cease and desist" account. (DMSF, ¶ 36). All communication with Plaintiff stopped after Miramed received this letter notice from Plaintiff's attorney. (DMSF, ¶ 37).

## STANDARD OF REVIEW

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court "must determine whether the evidence, so construed, establishes genuine disputes of material fact with respect to" plaintiffs' claims. *Harper v. Fulton Cnty.,* 748 F.3d 761, 765 (7th Cir. 2014). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable [finder of fact] could return a verdict in" the non-movant's favor. *Swetlik v. Crawford,* 738 F.3d 818, 826 (7th Cir. 2013). On cross motions for summary judgment, the court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.,* 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel,* 728 F.3d 731, 734 (7th Cir. 2013).

## ARGUMENT

**I.    MIRAMED IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF DID NOT EFFECTIVELY NOTIFY DEFENDANT TO CEASE AND DESIST TELEPHONE CALLS REGARDING THE DEBT.**

Plaintiff alleges claims under sections 1692c(c), d, d(5), e and f of the FDCPA but the single factual allegation for these claims is that Miramed continued to call Plaintiff after he allegedly submitted a request for the calls to cease. Plaintiff does not allege any other conduct

5

which could support the alleged statutory violations. Thus, all of Plaintiff's claims are essentially based upon an alleged violation of §1692c(c). Section 1692c(c) states, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communications with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. §1692c(c).

Plaintiff did not send a cease request to Miramed that would trigger Miramed's duty to stop contacting him. If Plaintiff is to be believed, then it is undisputed that Plaintiff sent the request to a third party using an unconventional means of communication. Plaintiff received three letters from Miramed which identified three ways to communicate directly with Miramed and where to send correspondence, including cease and desist requests. (DSMF, ¶¶ 5-8). These letters clearly instruct recipients to call, fax or mail Miramed at its office location in Lombard, IL. (DSMF, ¶ 6). The letters say nothing about emailing Miramed and do not contain the third party's website address which Plaintiff allegedly used to submit a cease request. (DSMF, ¶ 8). Despite having three defined means of communicating directly with Miramed (fax, phone and mail), Plaintiff ignored those means of communication and allegedly found the website of Miramed's affiliated company, Miramed Global Services, and allegedly chose to send a cease request through an email link on this third party's website.

It is undisputed that Miramed Revenue Group, LLC does not operate, monitor or maintain the website allegedly used by Plaintiff. It is also undisputed that Miramed did not receive any type of cease request from Plaintiff. In light of Plaintiff's unconventional choice to submit a cease request through a website to a company that is different than Miramed, Plaintiff fails to present any reliable evidence that Defendant Miramed was aware of any request by Plaintiff to stop contacting him. Indeed, the first time Miramed became aware of a request to

6

cease contact regarding the account was when it was contacted directly by Plaintiff's attorney in November 2017. (DSMF, ¶¶ 12, 35). Miramed ceased all communication attempts once it was contacted by Plaintiff's attorney pursuant to its procedures and policies. (DSMF, ¶ 37).

Several courts have addressed a §1692c(c) claim under similar circumstances. Recently, in *Wise v. Credit Control Servs.*, the plaintiff alleged a similar claim as Plaintiff claims in this case. In *Wise*, the plaintiff's attorney faxed a letter refusing to pay the debt to a fax number which belonged to an affiliated company of the defendant despite the defendant's letters to the plaintiff listing methods to communicate and the fax number used by the plaintiff was not one of the identified methods. *Wise v. Credit Control Servs.*, Case No. 16 C 8128, 2018 U.S. Dist. LEXIS 179548, *2-3 (N.D. Ill. Oct. 19, 2018). The court held that the defendant was not required to cease communications because it did not receive the cease request and the plaintiff did not send the cease request to the defendant but to another company. *Id.* at *12-16. The court reasoned that the plaintiff ignored that the defendant provided an appropriate fax number in the contact information within the collection letters sent to the plaintiff and used a different number with no indication that the number was appropriate for collections-related correspondence. *Id.* at n. 1.

Here, Plaintiff took an almost identical action as the plaintiff in *Wise* by ignoring the methods of contact that Miramed provided in the letters sent to Plaintiff and instead choosing to submit a cease request via a website with no indication that the website was appropriate for collections-related correspondence. "Debt collectors are required to use a 'valid and proper address' to provide effective notice to consumers, and where the debt collector clearly provides its contact information in its collection notices, the Court sees no reason to hold consumers to a lesser standard, at least on that basic, limited issue." *Wise*, 2018 U.S. Dist. LEXIS 179548, n.1

7

citing *Glynn v. Midland Funding*, Case No. 16 C 2678, 2018 U.S. Dist. LEXIS 71316, *5 (C.D. Cal. Apr. 27, 2018); *Thompson v. Chase Bank, N.A.*, Case No. 09 C 2143, 2010 U.S. Dist. LEXIS 32620, *2 (S.D. Cal. Mar. 30, 2010). In this case, Plaintiff's entire suit is based upon Plaintiff's deviation from the clearly disclosed means of communicating directly with Defendant and Plaintiff's decision to allegedly use a third party's web site to contact Defendant. Indeed, the unconventional and creative efforts allegedly made by Plaintiff to contact Defendant via a web page for a third party seem more like an attempt to fabricate a FDCPA claim trap. Plaintiff should not be allowed to manufacture FDCPA claims by ignoring the disclosed effective ways to communicate with Miramed about his debt.

       *Pace v. Portfolio Recovery Associates, LLC* is instructive. In *Pace*, the plaintiff claimed that Portfolio continued calling him after he sent a cease letter. 872 F. Supp. 2d 861, 865 (W.D. Mo. 2012). Portfolio showed that it did not receive plaintiff's letter. *Id.* Like Plaintiff in this case, plaintiff Pace could not recall when he sent the letter or the content of the letter. *Id.*; (DMSF, ¶ 10). The court explained that plaintiff's "vaguely asserted claim that at some point he sent such a letter to this defendant without further verification and in light of defendant's denial of receipt probably fails to demonstrate the existence of a triable material fact as to this issue." *Id.* at 866. *Pace* explained that a plaintiff's mere claim of sending the letter is not sufficient especially to "an organization that presumably has a systematic method for recording and filing incoming mail." *Id.* Simply put, a plaintiff's claim under the FDCPA "requires a claimant to make specific proof of receipt" of the letter, "presumably from a defendant's records." *Id.* In this case, Plaintiff cannot prove that Miramed received his cease request submitted via a third party's form on a website because it is undisputed that Miramed does not own, operate or maintain the website and its parent company did not forward any cease request from Plaintiff to Defendant. (DSMF, ¶¶

303381447v1 1007831

11-12).

Another case that is instructive for this matter is *Nichols v. GC Services, LP*, because it addressed a similar claim by a plaintiff who claimed he sent a cease letter by certified mail to the defendant requesting that the defendant stop calling him. *Nichols v. GC Services, LP*, Case No. 06 C 1491, 2009 U.S. Dist. LEXIS 100041 *1-2 (D. Ariz. Oct. 27, 2009). Part of the plaintiff's proof of notice to the Defendant was a letter addressed incorrectly addressed to the Department of Education, not the defendant. *Id.* at *4. The court explained that "this unexplained discrepancy undermines plaintiff's statement that a notice was properly directed to defendant." *Id.* Here, like in *Nichols*, Plaintiff also did not send the alleged notice to the correct company. The court pointed "to the absence of a note about any notice from plaintiff in defendant's account detail listing, where one would appear ordinarily." *Id.* Like in *Nichols*, Miramed's account notes contain no indication of receiving a written cease request. (DSMF, ¶ 12). The court granted defendant's motion for summary judgment because "plaintiff ha[d] insufficient evidence from which a reasonable trier of fact could find that defendant received a cease communication notice from him." *Id.* The Ninth Circuit affirmed. *Nichols v. GC Services, LP*, 423 Fed. Appx. 744 (9th Cir. 2011). Here, Miramed has shown that it has no record of receiving any type of cease request from Plaintiff. (DSMF, ¶ 12). Plaintiff cannot prove that he effectively notified Miramed to cease calls to his telephone number. Therefore, this Court should grant summary judgment in favor of Miramed.

## II. SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF PLAINTIFF BECAUSE THERE IS NO CREDIBLE PROOF THAT A CEASE REQUEST WAS SUBMITTED.

It is highly doubtful that Plaintiff ever sent a request asking Miramed to stop calling him. During Plaintiff's deposition, he testified that the only time that he asked Miramed to stop calling

him was during the phone calls that he received. (DSMF, ¶ 14). However, the recordings of those calls show that at no point did Plaintiff verbally request Miramed to stop calling him. (DSMF, ¶ 15). Plaintiff's complaint lacks any allegations regarding verbal cease request during telephone calls with Miramed.

Plaintiff then contradicted his testimony and further testified to visiting a website and submitting a cease request using a contact form on that website using his iPhone. (DSMF, ¶ 16). Plaintiff testified that he accessed a website via his iPhone by typing "Miramed" in a Google search. (DSMF, ¶ 17). He claims that he provided his name, telephone number, address and message for Miramed to stop calling him on a website submission form. (DSMF, ¶ 18). However, Plaintiff could not recall when he allegedly wrote and sent the cease request. More importantly, when Plaintiff was shown the documents produced by Plaintiff's counsel as evidence of the cease communication, Plaintiff did not recognize the documents which were produced by his attorneys. (DSMF, ¶¶ 20-23). Although Plaintiff claimed to have taken a screen shot on his iPhone of the website when he submitted his cease request, he did not recognize the "copy" of the alleged cease request which was produced by his attorneys and admitted that he did not take the photo which was produced. (DSMF, ¶¶ 20-23). The documents produced by Plaintiff's counsel in support of the Plaintiff's claim are therefore inadmissible hearsay and unreliable. Plaintiff has no credible evidence that he submitted a cease request; therefore, this Court should grant summary judgment in favor of Miramed.

## III. THIS COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF MIRAMED BECAUSE IT IS ENTITLED TO THE BONA FIDE ERROR DEFENSE.

If this Court determines that Plaintiff has come forth with credible evidence of submitting a cease request to Miramed and that Miramed's conduct violated the FDCPA (which is denied),

Miramed is entitled to the bona fide error defense. A debt collector should prevail on a bona fide error defense if: (1) the error was unintentional; (2) the violation resulted from a bona fide error; and (3) the defendant maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005); *see also Aubel v. McGill Mgmt.*, No. 11 cv 685, 2013 U.S. Dist. LEXIS 135852, at *8-9 (N.D. Ill. Sept. 23, 2013) (holding that a debt collector law firm was not liable for violations of the FDCPA because any false representations were unintentional and the result of a bona fide error). Miramed has produced sufficient evidence to meet all three requirements of the bona fide error defense.

To prevail under the first prong of the bona fide error defense, the debt collector must only show that the violation of the FDCPA was unintentional, not that the *communication itself* was unintentional. *Kort*, 394 F.3d at 538. Even if Miramed's call to Plaintiff after September 20, 2017 were a violation of the FDCPA, its conduct was unintentional. Miramed was unaware that Plaintiff requested that Miramed stop calling him. Plaintiff allegedly submitted a request for calls to cease on a website owned, operated and maintained by Miramed's parent company. (DMSF, ¶¶ 9, 11). Miramed does not received any communications when information is submitted on its' parent company's website. (DMSF, ¶ 32). Miramed did not receive notice of a request to cease calls on Plaintiff's account. (DMSF, ¶ 12). Thus, calls were made without the actual any knowledge that Plaintiff allegedly requested calls to stop, making any violation of the FDCPA unintentional.

Miramed's alleged error was bona fide. What occurred is precisely the type of error that the Seventh Circuit explains as "if made, it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *See Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 538 (7th Cir. 2005); Black's Law Dictionary 168 (7th ed. 1999) (defining "bona fide" as "1.

11

Made in good faith; without fraud" and "2. Sincere; genuine"); *see also Edwards v. McCormick*, 136 F.Supp.2d 795, 801 n. 8 (S.D. Ohio 2001). Miramed has no record of Plaintiff's cease request when calls were made after September 20, 2017. (DMSF, ¶ 12). If a cease request was noted on Plaintiff's account, calls would not have been made because the account would have been closed pursuant to Defendant's procedures. (DMSF, ¶¶ 26-28).

Miramed has a detailed set of procedures designed and implemented to ensure that when a debtor requests that communications cease, it honors such request and ceases all communications on the account. Miramed's corporate representative testified that it is Miramed's policy and procedure to remove the phone numbers from an account if a debtor communicates that they want Miramed to stop contacting them. (DMSF, ¶ 26). In addition, an account representative will add a "do not call" or "DNC" code within the phone number field and enter a code to stop letters that may be scheduled to be sent. (DMSF, ¶ 27). Once the appropriate codes have been added to the account to stop the communications, the account is closed with the XAZ status code, which is Miramed's code for cease and desist. (DMSF, ¶ 28). Miramed employees are trained that accounts with a cease and desist status code are prohibited from being contacted. (DMSF, ¶ 29). These policies and procedures are also written as a standard operating procedure and provided to employees to follow. (DMSF, ¶ 30). It is undisputed that Miramed has policies and procedures to notate its account records of a cease communication request and to honor any cease communication request it receives.

Not only does Miramed have policies and procedures to stop communicating with debtors once a cease and desist request has been received, but it has policies to make sure it receives cease and desist notices from debtors. Miramed provides debtors with methods to contact Miramed regarding account inquiries. (DMSF, ¶ 6). These methods are provided on all three of

303381447v1 1007831

the letters sent to Plaintiff. (DMSF, ¶¶ 5-6). Miramed discloses its phone numbers, fax numbers and mailing addresses on the letters. (DMSF, ¶ 6). Miramed does not have a website and does not provide its representatives with external emails to be able to receive communications from debtors via email. (DMSF, ¶ 8, 31). Although Miramed does not operate or have access to its' parent company's website, there are procedures in place for the parent company to forward communications it receives from individuals regarding Miramed accounts. (DMSF, ¶ 33). For example, it is Miramed's policy that if a communication from a debtor is forwarded from its parent company, Miramed will update its account records to reflect the contents of the debtor's communication. (DMSF, ¶ 34). If the forwarded communication is a cease request, then Miramed would not ignore that cease request and it would code the account with a cease and desist code. Miramed has reasonable procedures to prevent calls to a debtor, but Miramed needs to actually be notified of the cease request to trigger its reasonable procedures to terminate communication with a debtor.

The bona fide error affirmative defense does not require fail safe procedures. Section 1692k(c) only requires collectors to adopt reasonable procedures. *See Hyman v. Tate*, 362 F.3d 965-968 (7th Cir. 2004), *Ross v. RJM Acquisitions Funding LLC,* 480 F.3d 493 (7th Cir. 2007) ("The word 'reasonable' in the FDCPA defense cannot be equated to 'state of the art'...."). Miramed's policies and procedures regarding honoring cease and desist requests actually do prevent violations of the FDCPA. In this case, the facts show how Miramed followed its procedures for ceasing communication with debtors after receiving notice of a cease request. On November 1, 2017, Plaintiff's attorney sent Miramed a letter regarding Plaintiff's claims. (DMSF, ¶ 35). Upon receipt of that communication, Miramed began to follow its policies and procedures to properly code and close Plaintiff's account as "cease and desist" account. (DMSF,

13

¶ 36). The Plaintiff's attorney's letter was the first time that Miramed received notice of a request to stop calling Plaintiff about the debt. (DMSF, ¶ 12). It is undisputed that all communication with Plaintiff stopped after Miramed received this notice. (DMSF, ¶ 37). This is clear and convincing evidence that Miramed follows reasonably adapted policies and procedures to avoid violations of the FDCPA. *See Bynum v. Cavalry Portfolio Services, L.L.C.*, 2005 WL 2789199 (N.D. Okla. Sept. 29, 2005) (granting summary judgment to defendant on the bona fide error defense because defendant's remedying of a violation after discovery showed the violation was not intentional and was a bona fide error).

Courts faced with similar situations have consistently absolved defendants of liability. In *Rush v. Portfolio Recovery Associates, LLC*, the plaintiff retained counsel who sent cease and desist letters to the defendant, and later brought a § 1692c(c) claim. *Rush v. Portfolio Recovery Associates, LLC*, 977 F.Supp.2d 414, 418 (D. N.J. 2013). The defendant had instructed its employees not to call consumers following the receipt of a cease and desist letter, and trained its employees on this internal policy and procedure, however, the policies and training, employees made calls after the plaintiff sent a cease and desist letter. *Id.* at 427. The *Rush* court cited *Kort* for the "reasonable precaution standard" and granted the defendant's motion for summary judgment because Portfolio sufficiently explained "the process for receiving, reviewing, and logging these letters into a consumer's account, and how its own system, consistent with its policies and procedures, prevents calls from being made after such a letter." *Id.* at 428. *See also Isaac v. RMB Inc.*, 604 Fed. Appx. 818 (11th Cir. 2015) (affirming a grant of summary judgment on defendant's bona fide error defense when defendant called plaintiff after a cease and desist letter because the error was unintentional and RMB had trained employees to process the cease letters).

14

Miramed provided sufficient evidence that it has policies and procedures to honor cease and desist requests. Thus, even if a violation did occur, such a violation was unintentional, the result of a bona fide error, and Miramed has proven that it maintains detailed policies and procedures for preventing such violations. This Court should grant summary judgment in favor of Miramed.

## CONCLUSION

WHEREFORE, Defendant, MIRAMED REVENUE GROUP, LLC, respectfully requests that this Court enter an order granting Defendant's motion for summary judgment, entering judgment in favor of Defendant and against Plaintiff, and for any other relief this Court deems just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

*/s/* Nabil G. Foster
Nabil G. Foster

Nabil G. Foster
Lindsey A.L. Conley
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
E-mail: nfoster@hinshawlaw.com
E-mail: lconley@hinshawlaw.com

15

303381447v1 1007831

## CERTIFICATE OF SERVICE

I, Nabil G. Foster, an attorney, certify that I shall cause to be served a copy of **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon the following individual(s), by deposit in the U.S. mail box at 151 North Franklin Street, Chicago, Illinois 60606, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this on March 18, 2019.

_X_   CM/ECF  
___   Facsimile  
___   Federal Express  
___   E-Mail  
___   Messenger  

*Attorneys for Plaintiff(s)*  
Sergei Lemberg  
LEMBERG LAW, L.L.C.  
43 Danbury Road, 3rd Floor  
Wilton, CT  06897  
Phone: (203) 653-2250  
Fax: (203) 653-3424  
Email: slemberg@lemberglaw.com  

Katherine Ann Rehan  
KATHERINE A. REHAN ATTORNEY AT LAW  
123 N. Des Plaines Street, Apt. 101  
Chicago, IL 60661  
Phone: (312) 445-6464  
Email: katy@illinoisattorney.com  

Nabil G. Foster  
Lindsey A.L. Conley  
HINSHAW & CULBERTSON LLP  
151 North Franklin Street, Suite 2500  
Chicago, IL 60606  
Telephone: 312-704-3000  
Facsimile: 312-704-3001  
nfoster@hinshawlaw.com  
lconley@hinshawlaw.com  

/s Nabil G. Foster  
Nabil G. Foster  
One of the Attorneys for Defendant  

303381447v1 1007831