UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JORGE GARCIA,

    Plaintiff,

  v.

MIRAMED REVENUE GROUP, LLC AND DOES 1-10,

    Defendants.

No. 18 CV 1384

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Jorge Garcia brings a Fair Debt Collection Practices Act claim against Miramed Revenue Group, asserting that Miramed continued contacting him after his lawyers sent an online message to stop, in violation of 15 U.S.C. § 1692c(c). Miramed moves for summary judgment, arguing that Garcia failed to properly notify it to cease and desist collection efforts and that if a violation occurred, it was the result of a bona fide error, for which Miramed cannot be held liable. For the reasons discussed below, the motion is granted.

I.    **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I construe all

disputed facts in favor of the nonmoving party. *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019).

## II. Background

When Plaintiff Jorge Garcia failed to pay a debt he owed to Franciscan Health Chicago Heights, it placed Garcia's account with Miramed[1] for collection. [43] at 1–2 ¶¶ 3–4.[2] To collect, Miramed sent Garcia three letters. *Id.* at 2 ¶ 5. Each prominently displayed phone numbers and a mailing address and stated, "Please Send All Correspondence, Including Bankruptcy Notices, To: MiraMed Revenue Group, 360 E. 22nd St., Lombard, IL 60148." *Id.* at 2 ¶ 6. The only website referenced in the letters was a third-party website where Garcia could make online payments (www.mmrgpayment.com). *Id.* at 2 ¶ 7. The letters did not provide an email address or otherwise invite email communications. *Id.* at 2 ¶ 8.

On September 20, 2017, on behalf of Garcia, Lemberg Law composed a message on the website www.miramedgs.com/contract-us. *Id.* at 9 ¶ 1.[3] The website belonged

---

[1] I refer to defendant Miramed Revenue Group, LLC as Miramed. I refer to its parent, Miramed Global Services, Inc., as Miramed Global.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiff's responses to defendants' Local Rule 56.1 statement, [43], where both the asserted fact and the opposing party's response are set forth in one document. Defendant did not respond to plaintiff's statement of additional facts, so those facts are deemed admitted. Any arguments raised in the Local Rule 56.1 statements, additional facts included in responses or replies, and statements that are unsupported by admissible evidence (or where a party fails to follow Local Rule 56.1's direction to cite to supporting material in the record) have been disregarded. Only facts that are properly controverted will be considered disputed.

[3] Miramed points out inconsistencies between Garcia's testimony and representations his attorneys have made throughout this case. For example, Miramed notes that Garcia alleged in his complaint and testified that he submitted a cease and desist request, but the evidence

to Miramed Global Services, Inc., an affiliate and parent company of defendant Miramed, *Id.* at 3 ¶ 11, but it displayed Miramed's name and logo. *Id.* at 10 ¶ 4. Lemberg Law used Microsoft's snipping tool to screenshot the contents of the message and saved that screenshot to its servers. *Id.* at 9 ¶ 1. The message identified Garcia's name, asked Miramed to stop calling Garcia's cell phone, and listed Garcia's phone number and email address. *Id.* at 9–10 ¶ 2. Upon submission, the website said, "Thank you for your message!" *Id.* at 10 ¶ 3.[4] Miramed called Garcia to collect on his debt four times after September 20. *Id.* at 10 ¶ 9.

If Miramed Global thought that a message submitted on its website was meant for Miramed, it would forward the message to Miramed, but there were no policies or procedures in place to ensure that it did so. *See id.* at 8 ¶¶ 32–33; 10 ¶¶ 5–6; *see also* [38-2] at 46:6–16.[5] On average, Miramed Global forwarded a handful of messages to Miramed per month. [38-2] at 46:17–22. Miramed Global deleted records of messages submitted through the website within thirty days of their receipt. *Id.* at 10 ¶ 7. When

---

shows that his attorneys submitted it on his behalf. While these inconsistencies raise questions about Garcia's credibility, they do not create genuine disputes of material fact.

[4] Miramed objects to this message as hearsay. But Garcia relies on the message not to establish the truth of the matter asserted—that Miramed thanked Garcia—but to show that Garcia's message went through. The presence of any message, regardless of its content, would indicate the same, and so it is not hearsay.

[5] Miramed claims both that it did not receive any communications from Miramed Global's website and that there were procedures in place to ensure that it did. *See* [43] at 8 ¶¶ 32–33. Miramed cites Christine Bodmer's testimony in support of both contentions. In response to the question of whether Miramed had any policies or procedures in place regarding messages sent via the website, she said, "No, we wouldn't … It's not our website so no, we don't." [38-2] at 44:13–21. Bodmer later added that "if something is inadvertently sent to [Miramed Global], they will notify us if they think it belongs to us. I mean, they have no way of knowing. But if they suspect that it's something, whether it's, you know, consumer, client related … they'll forward it to us to research." *Id.* at 46:6–16.

Miramed and Miramed Global checked to see whether they had any record of Garcia's cease and desist message, they could not find it on their servers. *Id.* at 10 ¶¶ 7–8.

If a debtor requested that Miramed stop contacting him, Miramed's policy required it to remove the debtor's phone number from his account. *Id.* at 6 ¶ 26.[6] An account representative also added a "do not call" or "DNC" code in the phone number field and entered another code to stop letters from being sent. *Id.* at 6–7 ¶ 27. Miramed then added a final XAZ code to close the account, and it trained its employees not to contact accounts with these codes. *Id.* at 7 ¶¶ 28–29. These policies were part of Miramed's standard operating procedures, which Miramed provided to all employees. *Id.* at 7 ¶ 30.

On November 1, 2017, Garcia's attorney sent Miramed a letter regarding Garcia's claims. *Id.* at 8 ¶ 35. In response, Miramed followed its policies and procedures and coded Garcia's account to cease and desist communications. *Id.* at 9 ¶ 36. Miramed initiated no further communications after receiving the letter. *Id.* at 9 ¶ 37.

### III. Analysis

The FDCPA requires that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not

---

[6] Garcia disputes the assertions in this paragraph, noting that Miramed's policy does extend to messages submitted through Miramed Global's website. Though Miramed's policy did not explicitly extend to website notifications, it applied generally, whenever Miramed received a request to halt communications.

4

communicate further with the consumer with respect to such debt," except in certain specific circumstances. 15 U.S.C. § 1692c(c). Miramed argues both that Garcia did not properly notify it of his request that it cease communications and that any violation was the result of a bona fide error.

### A. Bona Fide Error Defense

A debt collector is not liable for a potential violation of the FDCPA if it was the result of a bona fide error. *See* 15 U.S.C. § 1692k(c). The bona fide error defense requires that a defendant show: (1) the presumed FDCPA violation was unintentional, (2) the violation resulted from a bona fide error, and (3) it occurred despite procedures reasonably adapted to avoid such error. *Id.*; *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 952 (7th Cir. 2019). Though Miramed has procedures in place to cease collection efforts once it receives a request to end further communications, those procedures are not reasonably adapted to ensure it properly receives and codes requests debtors submit online.

The procedures in place need not be perfect or state of the art to be reasonable. *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497–98 (7th Cir. 2007). But Miramed's lack of any procedures to ensure it received online communications, under the circumstances, was insufficient. Even though the website belonged to Miramed Global, Miramed knew that consumers tried to contact it through the online form, yet Miramed did nothing to guarantee that Miramed Global identified or forwarded cease and desist requests it received, and that is unreasonable. A debt collector's procedures need not account for every obscure means through which a debtor may attempt to

send a notification. *See, e.g., Wise v. Credit Control Servs., Inc.*, 16 C 8128, 2018 WL 5112983, *6–7 (N.D. Ill. Oct. 19, 2018) (holding that the bona fide error defense did not require a debt collector to ensure it received a cease-and-desist request faxed to an unmonitored fax number once used by an affiliated company's HR department). But because Miramed consumers were confused (and reasonably so, given the presence of Miramed's logo)—and because Miramed knew about that confusion and chose not to do anything to clear it up—its failure to implement concrete procedures to receive online messages, like Garcia's, is unreasonable, and so any violation is not the result of a bona fide error.

      B.      **Failure to Cease Communications**

Though Miramed has not established that it is entitled to the bona fide error defense, no reasonable juror could conclude that it violated the FDCPA because Garcia has not shown that Miramed received his request. The act requires that a debt collector cease communications only when notified, in writing, of a request to do so. It specifies that if a consumer sends his notice by mail, "notification shall be complete upon receipt." 15 U.S.C. § 1692c(c). Though Garcia submitted his notice electronically, he does not argue that receipt is not required. Instead, he argues that there is enough evidence from which a jury could conclude that Miramed received his notification. I disagree. Neither Miramed nor Miramed Global has any record of Garcia's message. Though a reasonable juror could conclude that Miramed Global received the request, given the lack of procedures in place requiring it to pass along relevant messages, that does not mean that Miramed received it. That Miramed

Global sometimes forwarded messages it thought were intended for Miramed, does not allow the inference that Miramed received Garcia's message. And Miramed Global's receipt is not attributable to Miramed. A debt collector can be vicariously liable for unlawful collection activities others take on its behalf. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016). But Garcia asserts that Miramed violated the act when it when it continued to contact him after September 20, not that it is vicariously liable for a violation Miramed Global committed. Miramed Global is not a debt collector, nor was it engaging in collection activity on Miramed's behalf. Though the two companies are affiliated, they are not the same, and notice to one does not automatically count as notice to the other. Because Garcia has not shown that Miramed received his message, no reasonable jury could conclude that Miramed's subsequent calls violated the act.[7]

Garcia never identified or served the Doe defendants, and his claim against them is also dismissed. *See* Fed. R. Civ. P. 4(m); *Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 217–18 (7th Cir. 1997).

---

[7] I do not reach Miramed's argument that a debtor must conform his communications to the methods a debt collector specifies.

7

## IV. Conclusion

The motion for summary judgment [36] is granted. Enter judgment and terminate civil case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: August 16, 2019